IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | |
|---|---|
| HARRY ROLAND, | 1:24-CV-00311-RAL |
| Plaintiff | RICHARD A. LANZILLO<br>Chief United States Magistrate Judge |
| vs. | |
| WELLPATH, et al., | OPINION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| Defendants | RE: ECF NO. 55 |

## I. Relevant Procedural History

Plaintiff Harry Roland, an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), brings this civil rights action against medical personnel and staff members at the State Correctional Institution at Forest (SCI-Forest). ECF No. 1. In his Amended Complaint, Roland alleges that the Defendants displayed deliberate indifference to his serious medical needs and engaged in unlawful retaliation by depriving him of necessary medications and restricting his ability to take his medications at the proper time. ECF No. 21. He seeks $100,000.00 in monetary damages. *Id.*

Three Defendants remain in this action: RN Brad Avenoti, Corrections Health Care Administrator Kim Smith, and Medical Records Custodian Bob Rumcik.[1] *Id.* They have filed a motion for summary judgment (ECF No. 55), supporting brief, concise statement of material facts, and appendix of exhibits. *See* ECF Nos. 56-58. Although he was ordered to file a response to Defendants' motion on or before March 16, 2026, Roland failed to respond. ECF No. 59. As such, this matter is ripe for adjudication.

II. Material Facts

Before summarizing the pertinent facts, the Court notes that Roland failed to respond to Defendants' concise statement of material facts, as required by Local Rule 56.C.1. To facilitate the Court's ability to identify disputed and undisputed material facts, this Court's Local Rules requires a party moving for summary judgment to file a concise statement of material facts setting forth in numbered paragraphs and with citation to proper evidentiary support each factual assertion that the movant contends is undisputed and material. *See* LCvR 56.C. The rule, in turn, requires the party opposing the motion for summary judgment to file a responsive concise statement of material facts which (1) admits or denies the facts asserted in each numbered paragraph of the movant's concise statement; (2) sets forth with appropriate citation to the record the basis for any denial of asserted fact; and (3) states, in separately numbered paragraphs, any additional material facts upon which the party relies in opposing the motion. *See* LCvR 56.C.1. Courts in the Western

[1] Three other Defendants – Wellpath, E. Snyder, and Mary Howick – were previously dismissed from this action. *See* ECF No. 60.

District of Pennsylvania require strict compliance with the provisions of Local Rule 56. *See*, *e.g.*, *First Guard Ins. Co. v. Bloom Services, Inc.*, 2018 WL 949224, at *2-3 (W.D. Pa. Feb. 16, 2018); *Hughes v. Allegheny County Airport Authority*, 2017 WL 2880875, at *1 (W.D. Pa. July 6, 2017).

A party "faces severe consequences for not properly responding to a moving party's concise statement." *Hughes*, 2017 WL 2880875, at *1. All facts "set forth in the moving party's Concise Statement of Material Facts . . . which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56.E. Because Roland has failed to file a responsive concise statement of material facts, each fact stated in Defendants' concise statement is deemed admitted. LCvR 56.E.

Roland's Amended Complaint alleges that he suffers from restless leg syndrome (RLS), which was treated with medication known as Miripex, and a thyroid imbalance for which he received a synthetic hormone, Levothyroxine. ECF No. 21 at pp. 2-7. Each medication is time-sensitive: Miripex must be taken at bedtime to effectively treat RLS, and Levothyroxine must be taken on an empty stomach in the morning. *Id.* ¶¶ 4-5, 15. To meet these requirements, Roland generally took his Miripex around 9:00 p.m. and his Levothyroxine thirty to sixty minutes before his 6:15 a.m. breakfast tray arrived. *Id.* ¶¶ 4, 15-16.

Prior to the events underlying this lawsuit, Roland had "keep on person" ("KOP") privileges, meaning that the prison permitted him to keep his medications

in his cell and take them on his own. *Id.* ¶ 3. At some point in May or June of 2024, however, Roland received a misconduct for selling Tylenol to another inmate. ECF No. 58-1, p. 66. Although that misconduct was later dismissed, Roland alleges that Defendants used the accusation as a basis to remove his KOP privilege. ECF No. 21 ¶ 3. As a result, he is now required to take his medications in front of a staff member at one of the prison's "pill lines," offered four times a day. *Id.* ¶¶ 4, 16. Because the earliest pill line takes place at 8:00 a.m. and the latest at 4:00 p.m., Roland does not receive his Levothyroxine until after he has eaten breakfast and must take his Miripex too early in the afternoon to be effective. *Id.* ¶¶ 5, 16. He maintains that this amounts to deliberate indifference to his serious medical needs.

In addition to removing his KOP medication privilege, Roland avers that Defendants completely terminated his access to three additional medications because of his history of filing grievances: Imodium for Crohn's disease, coal tar shampoo for scalp psoriasis, and Protonix for dysphagia. *Id.* at pp. 6-8. Roland attributes the removal of his medications to unlawful retaliation. *Id.*

Between May 2024, when Roland's medication restriction went into effect, and November 2024, when he initiated this lawsuit, Roland filed the following thirteen grievances related to the issues identified in his Amended Complaint:

- Grievance 1091613, filed June 2, 2024, challenging the misconduct for selling Tylenol and the removal of his KOP privilege (ECF No. 58-1 at p. 66)

- Grievance 1093575, filed June 17, 2024, again challenging the misconduct for selling Tylenol and the removal of his KOP privilege (*Id.* at p. 80)

- Grievance 1095735, filed June 28, 2024, complaining that he had to take his bedtime medications too early in the day to be effective (*Id*. at p. 92)

- Grievance 1095743, filed June 28, 2024, complaining that Wellpath had terminated one of his medications with no explanation (*Id*. at p. 95)

- Grievance 1095745, filed June 30, 2024, averring that he was being forced to take his bedtime medications at 3:30 p.m. (*Id*. at p. 115)

- Grievance 1095175, filed July 2, 2024, complaining that he was being forced to take his thyroid medication at an improper time (*Id*. at p. 130)

- Grievance 1095176, filed July 2, 2024, complaining that he was being forced to take his Miripex too early in the afternoon to be effective (*Id*. at p. 100)

- Grievance 1096818, filed July 10, 2024, complaining about the timing of his medications (*Id*. at p. 135)

- Grievance 1098184, filed July 15, 2024, challenging the removal of his KOP privilege (*Id*. at p. 148)

- Grievance 1097999, filed July 15, 2024, averring that he was being forced to take his bedtime medications at 3:30 p.m. (*Id*. at p. 154)

- Grievance 1105801, filed August 30, 2024, complaining about being forced to take his bedtime medications at 3:30 p.m. (*Id*. at p. 159)

- Grievance 1105803, filed August 30, 2024, complaining about being forced to take his bedtime medications at 3:30 p.m. (*Id*. at p. 172)

- Grievance 1109856, filed September 23, 2024, requesting reinstatement of his KOP privilege (*Id*. at p. 176)

Of these thirteen grievances, Roland completed the administrative review process for only one: Grievance 1095176. *See* ECF No. 58-1 at p. 197 ¶ 11. Notably, he did not request financial compensation in any of his grievances.

## III. Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

IV. Discussion

Defendants assert that they are entitled to summary judgment because Roland failed to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). The PLRA mandates that an inmate exhaust "such administrative remedies as are available" before bringing a suit challenging his conditions confinement. 42 U.S.C. § 1997e(a). This requirement applies to all claims relating to prison life that do not implicate the duration of the prisoner's sentence. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). An inmate's failure to exhaust is an affirmative defense that a defendant must plead and prove, *see Jones v. Bock*, 549 U.S. 199, 216 (2007), and, as such, it is non-jurisdictional and waivable. *See Andrews v. Behr*, 2023 WL 8809302, at *2 (W.D. Pa. Dec. 20, 2023) (citing *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018)). When raised by a defendant, exhaustion constitutes a threshold issue the Court must address before reaching the merits of the case. *Andrews*, 2023 WL 8809302, at *2.

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones,* 549 U.S. at 218 (citation omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). An inmate's failure to comply with the requirements of the prison grievance process constitutes a procedural default that a defendant may raise to establish an exhaustion defense.[2] *See Williams v. Wetzel et al.*, 2021 WL 5298872, at *5 (M.D. Pa. Nov. 15, 2021) (citing *Spruill v. Gillis,* 372 F.3d 218, 230-32 (3d Cir. 2004)). The DOC's Inmate Grievance Policy, DC-ADM 804, applies to most inmate complaints concerning conditions of confinement, including those raised by Roland in this case.[3]

DC-ADM 804 provides a three-stage grievance process that inmates must follow to exhaust their administrative remedies. First, "within 15 working days after the event upon which the claim is based," the prisoner must submit a written grievance for review by the Facility Grievance Coordinator. DC-ADM 804, § 1.A.8. Second, if the inmate is dissatisfied with the Facility Grievance Coordinator's initial review response, the inmate may appeal to the prison's Facility Manager. *Id.* at § 2.A.1.a, b. Finally, "[a]ny inmate who is dissatisfied with the disposition of an

---

[2] Prison officials have a reciprocal obligation to follow their own procedures, and their failure to do so may discharge a prisoner from any remaining obligations under the grievance system and cause his or her grievance to be considered fully exhausted. *See Shifflett v. Korszniak*, 934 F.3d 356, 365-367 (3d Cir. 2019) ("What is good for the goose is good for the gander").

[3] Three administrative remedy processes provide inmates in the custody of the Pennsylvania DOC with an avenue to challenge aspects of their confinement. *See McClain v. Alveriaz*, 2009 WL 3467836, at *6 (E.D. Pa. Oct. 26, 2009) (citations omitted). Those policies are: (1) the Inmate Discipline Policy, DC-ADM 801; (2) the Administrative Custody policy, DC-ADM 802; and (3) the Inmate Grievance Policy, DC-ADM 804. *Id.* The governing policy is dictated by the subject matter of the inmate's concern and his or her custody classification.

appeal from the Facility Manager/designee may submit an Inmate Appeal to Final Review" to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). *Id.* at § 2.B.2.a.

DC-ADM 804 includes an additional requirement that is specifically relevant to this case. This requirement mandates that an inmate who "desires compensation or other legal relief normally available from a court" must "request the relief with specificity in his/her initial grievance." DC-ADM 804 Inmate Grievance System Procedures Manual (DC-ADM 804), at § 1(A)(11)(d); *Wright v. Sauers*, 2017 WL 3731957 (W.D. Pa. Aug. 30, 2017); *Spruill*, 372 F.3d 218. Courts describe an inmate's obligation to satisfy this requirement as "proper exhaustion." *Smith*, 2018 WL 279363, at *3 (noting that a grievance must be fully exhausted to final review *and* "properly exhausted" with respect to remedy).[4] An inmate who fails to comply with this requirement is precluded from seeking in a lawsuit any legal relief, including monetary damages, that the inmate failed to request in the initial grievance. *See, e.g.*, *Wright v. Sauers*, 729 Fed. Appx. 225, 227 (3d Cir. 2018) (affirming order granting summary judgment based on lack of proper exhaustion where plaintiff failed to request monetary relief on his initial grievance form as required by DC-ADM 804).

In support of their exhaustion defense, Defendants have produced the entire administrative record for each of the pertinent grievances. ECF No. 58-1. They have also supplied an affidavit from Michael Bell, a SOIGA officer, attesting to the

---

[4] Conversely, an inmate's failure to properly exhaust his request for relief has been described as a form of procedural default. *See, e.g., Wright*, 3731957, at *6 (characterizing a failure to specifically request monetary damages in an otherwise fully-exhausted grievance as "giv[ing] rise to procedural default").

accuracy of Roland's grievance history. *Id*. at p. 195. A review of Roland's grievances makes plain that he did not request financial compensation in any of his filings. That oversight precludes him from seeking monetary relief here.[5] *See*, *e.g*., *Wright*, 729 Fed. Appx. at 227 ("[T]he Prison's policy required Wright to specifically request monetary relief in his initial grievance. Because [he] failed to do so, he defaulted his claim for money damages."); *Hobson v. Tiller*, 2021 WL 2191282, at *7 (W.D. Pa. May 6, 2021) ("Courts within the Third Circuit have [held] that an inmate procedurally defaults any claim for monetary relief if he did not seek such relief in his grievance.") (internal quotation and quoting source omitted). While Roland's inability to pursue his § 1983 claim because of a procedural violation may appear harsh, this outcome is compelled by precedent. *Wright*, 729 Fed. Appx. at 227; *Hobson*, 2021 WL 2191282, at *7. It is also consistent with two of the underlying purposes behind the exhaustion requirement: placing the agency on notice "of the prisoner's demand or valuation of his or her claim" and avoiding unnecessary litigation "by supporting early settlement or accommodation." *Wright*, 2017 WL 3731957, at *7. *See also Woodford v. Ngo*, 548 U.S. 81 (2006) (proper exhaustion permits claims to be "resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.").

In short, the PLRA requires this Court to apply the prison's available administrative exhaustion rules, however stringent, and in this case, those rules expressly and unambiguously direct an inmate who desires compensation to request it in his initial grievance. Roland's failure to do so precludes him from pursuing such

---

[5] Notably, Roland is not seeking any other relief in this action.

relief here. With no other relief claimed or available to Roland, Defendants are entitled to judgment as a matter of law.

## V. Conclusion

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment [ECF No. 55] and direct that judgment be entered in favor of Defendants and against Roland as to all claims. An appropriate order will follow.

Dated this 28th day of September, 2026.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE